May it please the Court, my name is Teresa Salazar and I represent Mr. Varun Goel. Counsel, I'd like to go right to what I think is the critical point here. If we determine that the IHA and the BIA affirming the IHA correctly concluded the credibility determination, doesn't that mean that everything but the motion to reopen would be decided in favor of the government? If we make that determination. Yes, Your Honor. It solves each one of those questions, doesn't it? Yes, Your Honor, that would be true. All right, and then we would have to separately we would look at the motion to reopen. Okay, go ahead. Well, the immigration judge denied this case for lack of credibility only. And she mainly thought, did not believe Mr. Goel because she just didn't believe that this conflict existed between the Nidankaris and the Sikh militants. She didn't find any evidence. Well, there's more to it than that, wasn't there? I mean, look, if a person gives two different versions of a significant event, isn't the finder of fact justified in believing that the event didn't happen at all? I mean, if you say I was assaulted with a knife, no, I was assaulted with a gun, no, I was taken to the police station, no, I was assaulted in front of my house. If there are significant material differences in a story about how one was assaulted, for example, isn't the finder of fact completely justified in believing that no assault took place at all? Well, actually, she's justified in finding some doubt. But in this case, Mr. Singh provided one account, and it was consistent in detail. And the different account was provided in an affidavit by a third party who didn't have personal knowledge. He submitted it. He submitted it. I mean, aren't we in a situation where, I mean, what authority do you have for the proposition that evidence submitted by a party should be disregarded or can't be considered by the BIA or the IJ in determining credibility? Is there any case that says that? I'm not familiar with a case that says that. But in this case, that wasn't the only evidence presented. He presented his testimony as well, and that was consistent. Well, you're saying that he gave consistent stories, and I'm not sure that the record supports that. But even assuming for purposes of discussion at this point that the petitioner was consistent, the evidence that the petitioner submitted in support and as supposed corroboration is inconsistent. And, yes, he did submit those affidavits. But when confronted with the differences in those affidavits at the hearing, he was rather surprised. He didn't know what those affidavits contained, and he actually stated at the hearing that they were just wrong, that he must have, for instance, read Josh Gupta, the press reporter. He said he must just have incorrect information. I don't know why he wrote this. But that's what the trier of fact is there for, is to resolve those sorts of things. And I'll remind you that the I.J. mentioned specifically in this case that demeanor was a very important part of her assessment. And we have to defer substantially to the I.J. if demeanor is a component. But it's not as if that is the sole basis. I mean, then we look at these specifics, and I agree. Your client says, well, that's different than mine, but that one's wrong and mine is right. Well, that's for the judge to decide, is it not? It is true. It's for the judge to decide. But I would also point out to the court that that particular person was not present at the hearing to testify and to take that version over the version of the applicant. You mean Gupta? Yes, Gupta. Yeah, but going back to what Judge Fee said, who put the Gupta information in on his behalf? Well, Mr. Goal actually submitted those affidavits, but he wasn't aware of their content. When a cross-examined, when we confronted with what the affidavits actually stated, he really was very surprised, and he stated that they were incorrect. Rebound by that, or is the IJ allowed to make different inferences? No, the IJ is allowed to make different inferences, but what I'm saying is that Mr. Gupta was not present to testify. We couldn't ask him where he got his information, how or where he got his information. It was an affidavit form, was it not? Yes, it was. Competent evidence submitted by your client contradicting his own testimony. You see, that sounds like a basis to have a credibility problem with your client's case. Yes, and I think that that's why the polygraph is so important in this case. Well, the polygraph, that's not newly discovered. That could have been done earlier. You can't get anywhere. You know, this is not a game of do-overs that go on forever. He could have submitted himself to the polygraph earlier, but it to me was not apparent until after he was found incredible, because we would argue that he was actually consistent. The two inconsistencies that the IJ found were not really inconsistencies. I mean, one was regarding dates. The immigration judge wanted an exact date, and he said he could not recall an exact date. And he tried. He tried three times to give it an exact date, and he really couldn't remember. The other inconsistency was regarding whether or not the militants had actually said something while shooting at his home. And he initially stated that they did say something, and then stated that they didn't say anything. No, it's the other way around, and that's why it's more significant. And having sat in a lot of trials, this is a scene that has played out with some degree of frequency, where he's asked if they said anything, and he said, no, they didn't say anything, at which point it dawns on him that that's not very helpful to his case. He then says, oh, yes, they did say something. They said, this is the house of a Nirankari. So it goes from, no, they said nothing, to then having said something, which would give a basis to support his claim for religious persecution. But immediately after that, he was asked again, so did they say something or not? And he said, no, they didn't say anything. Immediately after that, I don't think he understood what he was saying. I don't think that helps you very much. I just don't think he was able to express himself very well. Well, look, in looking at this record, it seemed to me that at least with respect to what happened on June 30th, 1999, and there was one statement that he wasn't injured and another that he was, there was then a question, did the attack begin with gunfire or with the beating of his father? Was his father inside the house? Was he outside the house? Were there statements about the Nirankari or weren't there? You know, I don't know what the IJ was supposed to think at that point. How could the IJ believe, let's put it this way, the IJ has the discretion to make a determination of credibility, and it seems to me with that evidence, which goes to the heart of the claim, that alone is enough to undermine credibility, isn't it? The IJ has based their decision on these documents, and again, these documents were provided by third-party individuals that were not contacted by Mr. Gold directly, who had no personal knowledge about what actually happened, and actually the only person with personal knowledge was the father, and his did corroborate his claim. I don't want to beat a dead bunch of documents, but your client submitted these, and that's kind of a representation that I stand behind these. These prove my case. If somebody found them at the library, it would be a different question. I understand he submitted them, Your Honor, and I guess the only explanation that I would have is that at the hearing it was clear that he didn't know what the content of those affidavits were, and he did try to explain why they were different than what he was testing. So he was putting garbage in to support his case? He didn't even know what was in it? Well, then why did he put it in? Of course he knew what was in it. I mean, come on. I don't believe that he did know what was in it. He found them on the ground and just didn't read them and put them into evidence? I think that he handed them to his attorney and his attorney submitted them. I think that's what happened. Where did he get them? Where did he get them when he handed them to the attorney? He got them from his father, who was the person who actually obtained them in India. It would be nice if that had been developed in court. I had no knowledge of the information I put in in favor of my case by affidavit form. That is true, and he was never asked those questions, so we wouldn't know. All he said was the guy was wrong. He said the guy was wrong, right, but when he was asked, well, didn't you provide these documents, he really didn't have an answer. But you see, again, the question is whether there's substantial evidence to support your credibility determination. We don't make it over again. We just look to see if there's substantial evidence that supports it, and it appears that this is substantial evidence that would support it. And I'm just saying that the version provided by an affidavit of a third party with no personal knowledge, taking that person's version of the events over the applicant himself is not substantial evidence. The court may disagree on that. Then why put them in at all? I mean, why not? What's the point of putting them in at all if you're going to say, you know what, we put them in, and now Ninth Circuit, they are helpful to us, so consider them. Oh, they weren't helpful to us, ignore them. I mean, is that the rule? No, I think that Mr. Gold should have been asked additional questions regarding the affidavits because they actually were significant. He was asked questions about the affidavits, and he says they were wrong. That's his view. That's his version. Now he's impeaching his own affidavits. Right. In any event, your time has expired. Thank you, Counsel. Thank you very much. You've got a tough hill to climb. We'll hear from the other side. Good morning, Your Honors. May it please the Court, Lindsay Chichester on behalf of the Attorney General. Just to get to the issue that seems to be of most interest today, I would just note that on page 320 through 322 in the record, the alien was asked about the specific documents as to how he received them. He was not asked specifically about their content, but each and every document he said, yes, my father sent it to me. These were not sent directly to a lawyer. These were not sent through anyone else. The alien asked his father to obtain these documents in support of his application, and he received those documents and then submitted them to the Immigration Court. You're suggesting that perhaps he read them before he submitted them? I'm saying it's reasonable to say that he did, and it certainly doesn't compel a conclusion that he did not. The Immigration judge's adverse credibility finding is quite clear in this case. She found him to have exaggerated his claims, was quite displeased with his demeanor, again, also the demeanor as being reviewed under the substantial evidence standard, and that it conflicted with the test. The documents really conflicted in significant ways that went to the heart of his claim for relief. In addition, with respect to the motion to reopen, the Board has broad discretion to grant or deny motions to reopen, and in this case, the evidence he sought to introduce was not previously unavailable. In fact, I believe in Petitioner's own brief he says he could have taken the polygraph during the time his case was pending before the Immigration judge. These things could have been introduced. He did not. They do not meet the standard under 8 CFR 1003.2c. Therefore, in this case, Petitioner has not met his burden one to show that the record compels reversal of the agency's denial of asylum. And furthermore, the motion to reopen was properly denied in the Board's broad discretion. I don't want to waste the Court's time. If the Court has no further questions, the Government will rest. I do not. Thank you, Counsel. The case just argued as ordered and submitted. Oh, could I ask a question? Judge Roberts. I'm sorry. For the Government. Yes, Your Honor. There was an effort here to introduce a polygraph. Am I correct? In the motion to reopen, Your Honor. Yes. In the motion to reopen. Is this a recurring issue? We have a couple of them today, I think. What is the Government's position with respect to the use of the polygraph on credibility issues in immigration cases? Is there one? I don't know. I would not speak for the Government. If you'd like a 28-day letter on that issue, I'd be happy to provide one. With respect to the context of the motion to reopen, obviously a polygraph test submitted that's clearly not new evidence after the finder of fact who is in the best position to judge the credibility of an alien, we would probably argue that it wouldn't trump it. At least, you know, I'd rather confer with my superiors on that before I give a full statement. If the Court would like that, I'd be happy to provide it. No, I just wondered if the Government had a position on it. You know, the trier of fact in these cases is the immigration judge. There's a reason that the substantial evidence gives deference to the IJ's decisions. Are there any cases yet that have properly come to our attention where somebody shows up at the initial hearing with the immigration judge with a polygraph in hand? I haven't been able to find any like that. Your Honor, I'm not aware of any. All of a sudden we're being flooded with this issue, but on motions to reopen. Yes, Your Honor. Actually, I was the attorney on the case that was submitted on the briefs, the Maharsingh case as well. Yeah. So we're familiar with the issue. I think the Government's position is that issue hasn't come up yet, but in the context of a motion to reopen, it certainly doesn't create a prima facie case of eligibility. Thank you, counsel. Thank you. The case, as I said, is ordered submitted. Thank you. The next case is Singh v. Gonzales is submitted. Moore v. Lamarck.
judges: Schroeder, Trott, Feess